UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

|  |  |  |
|---|---|---|
| JOSEPH B. BROOKS, | ) | Civil Action No. 06-01504-CRD |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | ORDER RE: SOCIAL SECURITY |
| v. | ) | DISABILITY APPEAL |
|  | ) |  |
| MICHAEL J. ASTRUE, | ) |  |
| Commissioner of Social Security, | ) |  |
|  | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

Plaintiff Joseph Brooks appeals the final decision of the Commissioner of the Social

Security Administration ("Commissioner") which denied his applications for Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C § § 401-

33 and Supplemental Security Income ("SSI") disability benefits under Title XVI of the SSA, 42

U.S.C. § § 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons

set forth below, the Court reverses and remands the Commissioner's decision for further

administrative proceedings.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff is a forty-year-old male who attended special education classes through ninth

grade. Administrative Record ("AR") at 27-28, 86, 275 and 498. He claims that he has a learning

disorder and can only read at the second or third grade level. *Id*. at 80, 86, 275 and 279. In July

2002, plaintiff was examined by psychologist Carl Epp, Ph.D. *Id*. at 22. Dr. Epp's testing

revealed that plaintiff has an IQ of 73, which is in the borderline range of intellectual

functioning. *Id.* Dr. Epp diagnosed plaintiff with a cognitive disorder not otherwise specified and

an unspecified mood disorder, with a global assessment of function ("GAF") score of 50. *Id.*

In August 2002, plaintiff was examined by Geordie Knapp, Psy.D. Dr. Knapp diagnosed

plaintiff with a mixed receptive-expressive language disorder, as well as a mood disorder due to

chronic pain with depressive features, borderline intellectual functioning, and assessed a GAF

score of 45. *Id.* In August 2002 and January 2003, state agency psychologists Drs. Harrison and

Eather completed a review of plaintiff's medical records pertaining to his metal impairments. *Id.*

at 24. They reported that plaintiff has a cognitive disorder not otherwise specified and a mood

disorder. *Id.*

In addition to his mental disabilities, plaintiff also suffers from physical disabilities. In

1984, his left ankle was fused after a motor vehicle accident. *Id.* at 115-91. In August 2002, Dr.

Darvill examined plaintiff for the agency after which the doctor opined that plaintiff could sit

only one-third of the workday and could do no standing. *Id.* at 280. In January 2003, non-

examining state-agency physician Dr. Hoskins determined that plaintiff could do only a limited

range of sedentary work. *Id.* at 299-306. In 2005, plaintiff was diagnosed with a cervical spine

condition which impacts his ability to use his hands. *Id.* at 374-78, 381, 422. Finally, plaintiff

has a congenital condition that has left him blind in his left eye. *Id.* at 21. However, he has good

vision in his right eye. *Id.*[1]

Plaintiff filed for DIB and SSI in April 2002, stating that he had been disabled since

September 6, 2001. *Id.* at 28, 59, 493. Prior to his alleged onset date, plaintiff's work experience

---

[1]Plaintiff also has a history of substance abuse, but the ALJ determined that it was "non-severe."
See AR at 23.

included that of a dishwasher, drywall hanger, laundry worker and caretaker. *Id.* at 91, 93-96,

275 and 443. After his alleged onset date, he packed fish and crab, and stacked wood. *Id.* at 91-

92, 106.[2]

      After his applications were denied initially and on reconsideration, he requested a de

novo ALJ hearing. *Id.* at 31, 41, 44, 452, 460. On December 28, 2004, ALJ John Bauer

dismissed plaintiff's request for hearing due to his failure to appear. *Id.* at 302-12, 472-75.

Thereafter, plaintiff requested Appeals Council review which was granted on May 5, 2005. *Id.* at

313-16.

      On September 28, 2005, plaintiff appeared with counsel and testified at a hearing before

ALJ Bauer. *Id.* at 490. In addition, Leta Berkshire testified as a vocational expert. On January 23,

2006, ALJ Bauer decided that plaintiff was not disabled at step five of the five-step sequential

evaluation. *Id.* at 27-28. On August 24, 2006, the ALJ's decision became the Commissioner's

final decision when the Appeals Council denied plaintiff's request for review. *Id.* at 9; 20 C.F.R.

§ 422.210(a) (2006). Plaintiff then initiated this civil action for judicial review of the

Commissioner's final decision.

//

//

//

//

//

---

[2]The ALJ determined that neither job constituted disqualifying substantial gainful activity. *Id.* at
21, 27.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. § §

405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

social security benefits when the ALJ's findings are based on legal error or not supported by

substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir.

2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 402 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th

Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical

testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d

1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may

neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v.

Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one

rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

## IV. EVALUATING DISABILITY

As the claimant, plaintiff bears the burden of proving that he is disabled within the

meaning of the SSA.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999)  (internal citations

omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity"

due to a physical or mental impairment which has lasted, or is expected to last, for a continuous

period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is

disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner. *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[3]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

---

[3] Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit.  20 C.F.R. § 404.1572.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

In this case, at step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date. *See* AR at 27. At step two, the ALJ determined that plaintiff had "severe" impairments. *Id*. At step three, the ALJ concluded that plaintiff did not have an impairment that met or equaled the requirements of a Listed impairment. *Id*. After step three but before step four, the ALJ determined that plaintiff's residual functional capacity ("RFC") was limited to a reduced range of "sedentary" work:

> He is able to lift 10 pounds occasionally, less than ten pounds frequently, stand or walk for at least two hours, and sit for about six hours during an eight hour work day. He is able to do a job that allows for limited ability to push and pull with his left lower extremity and left eye visual limitations. He can do work that does not involve more than occasional balancing or climbing or ramps or stairs, and no climbing of ladders, ropes or scaffolds. He can work in an environment in which he is able to avoid concentrated exposure to vibration and even moderate exposure to hazards such as machinery or heights. With respect to his mental abilities, he is able to do simple, routine tasks, in an environment in which he has limited contact with the public.

*Id.* at 27.

At step four, the ALJ found that plaintiff could not perform any of his past relevant jobs. *Id.* Thus, the ALJ reached step five. At step five, he relied on vocational-expert testimony to conclude that plaintiff is not disabled, but instead, can perform 6,262 jobs in the State of Washington as an assembler and 2,653,000 such jobs in the national economy. *Id.* at 26-27.

V. ISSUES ON APPEAL

The principal issues on appeal are:

1.      Did the ALJ properly evaluate the opinions of non-examining state-agency

         psychologists Drs. Harrison and Eather?

2.      Did the ALJ properly evaluate the borderline intellectual functioning of plaintiff?

3.      Did the ALJ properly evaluate plaintiff's educational level?

Dkt. No. 11, p. 1.

VI. DISCUSSION

A.      *Did the ALJ properly evaluate the opinions of non-examining state-agency
        psychologists Drs. Harrison and Eather?*

In August 2002 and January 2003, state agency psychologists Drs. Harrison and Eather completed record reviews pertaining to plaintiff's mental impairments. *See* AR at 24. They concluded that plaintiff has a cognitive disorder not otherwise specified and a mood disorder, with associated mild limitations in activities of daily living, moderate limitations in social functioning, and moderate limitations in concentration, persistence, or pace, with no episodes of decompensation. *Id.* The ALJ failed to discuss either Dr. Harrison's or Dr. Eather's opinions in his decision. *Id.* Instead, the ALJ simply stated that he "adopts the state findings with respect

to the "B" criteria." *Id.*

Plaintiff argues that the ALJ committed reversible error by failing to adequately address the psychologists' opinions. He contends that if the ALJ did indeed fully adopt the psychologists' opinions, the ALJ necessarily would have had to find plaintiff disabled at step five. *See* Pl. Br. at 10. Because the ALJ did not find plaintiff disabled, he must have rejected a portion of the psychologists' opinions. *Id.* However, the ALJ failed to expressly state what portion of the opinion he rejected and why.

It is well-settled law that an ALJ must evaluate the opinion of a non-examining state-agency doctor. *See Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995) (discussing the weight owed a non-examiner's opinion). Opinions from non-examining medical sources are to be given less weight than treating or examining doctors; however, an ALJ must always evaluate the opinion of such a source and may not simply ignore it. *Id.* In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. SSR 96-6p 1996 WL 374180, at *2 (S.S.A.).

The Commissioner contends that in this case ALJ did adequately consider Dr. Harrison's and Dr. Eather's opinions and rejected the portion of their opinions that were not supported by other evidence in the record. *See* Def.'s Br. at 4. While this indeed may be exactly what the ALJ did, he failed to identify what portion of their opinions he rejected, thereby leaving plaintiff and this Court in the position of having to "guess" at the ALJ's reasoning. Such a failure constitutes harmful error. The ALJ will have the opportunity to correct this error on remand.

B.     *Did the ALJ properly evaluate plaintiff's borderline intellectual functioning?*

Plaintiff also asserts that the ALJ erred in omitting his borderline intellectual functioning

from the hypothetical proffered to the vocational expert and upon which he relied in step five. *See*, *e.g., Lucy v. Chater*, 113 F.3d 905, 908 (8th Cir. 1997) ("[B]orderline intellectual functioning, if supported by the record as it is here, is a significant nonexcertional impairment that must be considered by a vocation expert."). The Commissioner counters that the hypothetical question properly accounted for all of plaintiff's physical and mental limitations, arguing that the ALJ need not recite certain "magic words" so long as the reviewing court can draw legitimate inferences from the ALJ's decision. *See* Def.'s Br. at 5. The Court agrees with plaintiff. Review of the administrative record reveals that the vocational expert did not address plaintiff's intellectual limitations.

When an ALJ relies on vocational-expert testimony, the hypothetical question that the ALJ poses to the vocational expert must be accurate and complete. *See Magallanes v. Bowen,* 881 F.2d 747, 755 (9th Cir. 1989) (stating that a hypothetical question must set forth all the limitations and restrictions of a particular claimant); *Gamer v. Secretary of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987). In this case, because the ALJ relied on testimony from a vocational expert that was based on an incomplete hypothetical question, the matter must be remanded for further administrative proceedings. *Gamer,* 815 F.2d at 1278 ("'If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has not evidentiary value.'") (quoted source omitted).

//

//

//

C.          *Did the ALJ properly evaluate plaintiff's educational level?*

As a final assignment of error, plaintiff argues that the ALJ erred in finding he had a "limited" education under the regulations, arguing that although this finding accounts for his highest grade completed, it is not dispositive in light of contradictory evidence. *See* 20 C.F.R. § 404.1564(b) ("Therefore, the numerical grade level that you competed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities."; "Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.")

Plaintiff concedes that he completed a ninth grade education, but argues that the courses he took were special education classes. *See* AR at 86, 275, 498. He contends that completing the ninth grade in a special education curriculum is not equivalent to a standard ninth grade education. He also points out that he was diagnosed with borderline intellectual functioning and a learning disorder, further reducing the possibility that his education is actually at a ninth grade level. *Id*. at 277, 445. Finally, plaintiff claims he reads at a second or third grade level. *Id*. at 443.

The Commissioner responds by arguing that plaintiff's education level was irrelevant to the ALJ's step five analysis. Specifically, the Commissioner argues that "[s]ince the ALJ only relied on the Guidelines as a framework, whether [plaintiff] obtained his education in regular classes or special education is not of the moment." Def.'s Br. at 6. The Commissioner cites no authority for this proposition.

10

In light of the contradictory evidence cited above, the Court finds that substantial evidence does not support the ALJ's finding that plaintiff had a ninth grade education level, rather plaintiff's educational achievement is actually much lower than that level. Contrary to the Commissioner's assertion, the ALJ must consider plaintiff's education level at step five. *See* 20 C.F.R. § 404.1564 (2006) ("When we decide whether you are disabled under [step five], we will consider your chronological age in combination with your residual functional capacity, education, and work experience.") Given this, the Court finds that the ALJ's step five finding is flawed and must be reassessed on remand.

### VII. CONCLUSION

For the reasons set forth above, the Commissioner's decision is REVERSED and this case is REMANDED for further administrative proceedings.

DATED this 24th day of January, 2008.

s/Carolyn R. Dimmick
_____
Carolyn R. Dimmick
United States District Court Judge